UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM R. CANADA, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-0127 |
| ) | Judge Echols |
| AMERICAN AIRLINES, INC. PILOT ) | |
| RETIREMENT BENEFIT PROGRAM and ) | |
| AMERICAN AIRLINES, INC., as ) | |
| Administrator of the Pilot Retirement Benefit ) | |
| Program, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001 *et seq.* involving retirement benefits. Pending before the Court is Defendant American Airlines, Inc. Pilot Retirement Benefit Program's and American Airlines, Inc.'s, as Administrator of the Pilot Retirement Benefit Program (collectively "the Plan's"), Motion to Transfer Venue (Docket Entry No. 35) and Motion to Dismiss (Docket Entry No. 38). Those Motions have been fully briefed by the parties (Docket Entry Nos. 36, 39, 46, 49, 51 & 52). The Court will address the Motions and the facts related to each motion under separate subheadings.

**I. MOTION TO TRANSFER**

Plaintiff is an American Airlines pilot who is based out of O'Hare International Airport in Chicago, Illinois. He commutes to that job from his home in Franklin, Tennessee.

1

Plaintiff filed suit after he received notice from the Plan Administrator at his home in Franklin that his retirement benefits would be suspended until he actually retired.[1] Defendants seek to transfer this case to the United States District Court for the Northern District of Texas, Fort Worth Division.

In seeking transfer, Defendants point out that American Airlines is a Delaware corporation with its principal place of business in Forth Worth, Texas and that the Plan is headquartered and administered from the same location in Fort Worth. Defendants also assert that all of the members of the Pension Benefits Administration Committee ("PBAC") work and reside in the Dallas-Fort Worth area, as does one of the two employees who handle Plan administration matters.[2] Further, the Plan documents are in Fort Worth and any injunctive relief in this case would be enforced in Texas.

In response, Plaintiff asserts that American Airlines maintains an office at 1 Terminal Drive in Nashville, Tennessee and typically has between ten and fifteen flights per day into and out of Nashville International Airport, eight of which are between Nashville and Dallas-Fort Worth. Plaintiff also notes that the Plan has significant business contacts in this District because it provides benefits and statements to approximately 170 Plan participants who reside in the Middle District of Tennessee.

The venue provision of Title I of ERISA allows plaintiffs to lay venue "where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" 29

---

[1] For purposes of the Motion to Transfer, the underlying basis for the claim is not material. It suffices to note that this action arose after the mandatory retirement age for commercial airline pilots was increased from 60 years to 65 years. The circumstances surrounding the change will be discussed in greater detail in Section IIB, infra.

[2] The other employee who handles plan administration works and resides in Kansas City, Missouri.

2

U.S.C. § 1132(e)(2). While Defendants admit that venue is appropriate in this district, they seek transfer under 28 U.S.C. § 1404(a) which provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A decision on whether to transfer lies within the broad discretion of the trial court. Bunting ex rel. Gray v. Gray, 2 Fed. Appx. 443, 448 (6th Cir. 2001).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric 'interest of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006)(citation omitted). Therefore, in deciding whether the present forum is inconvenient, the Court considers a number of factors, including (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. Id.; Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537 (6th Cir. 2002); Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991); Moeckel v. Caremark Rx, Inc., 385 F.Supp.2d 668, 686 (M.D. Tenn. 2005).

The convenience of the witnesses is often considered to be the most important factor when determining which forum is the most convenient. See, Romanowski v. RNI, LLC, 2007 WL 323019 at *3 (N.D. Ca. 2007); American Steamship Owners v. LaFarge North Am., Inc., 2007 WL 214408 at *6 (S.D.N.Y. 2007); Olberding v. Union Pacific R. Co., 2007 WL 148816 at *2 (W.D. Mo. 2007). The determination of the convenience of witnesses is not merely a "head count," but includes a consideration of the importance of each witness and "includes both non-party witnesses outside the

3

scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in the case." Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 2007 WL 412429 at *8 (S.D. Cal. 2007).

In this case, Defendants assert that all but one of their witnesses work and/or reside in Fort Worth. However, the Court finds this not compelling for several reasons. First, the witnesses Defendants have identified all appear to be employees of American Airlines and it is the convenience of non-party witnesses which is of critical concern to the transfer analysis since employees can be compelled to testify by their employers. Smith v. Kyphon, Inc., 578 F.Supp.2d 954, 963 (M.D. Tenn. 2008). Second, the convenience of witnesses is a lesser consideration where, as here, the defendant is a transportation company and is able to bring the witnesses to the forum with little difficulty. Kielczynski v. Consol Rail. Corp., 837 F.Supp. 687, 689 (E.D. Pa. 1993); Continental Airlines, Inc. v. American Airlines, Inc., 805 F.Supp. 1392, 1397 (S.D. Tex. 1992); see also, Board of Trustees Sheet Metal Workers v. Elite Erectors, Inc., 212 F.3d 1031, 1037 (7th Cir. 2000)("easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas"). Third, the parties agree that this case may in fact be decided on the basis of "paper submissions" in that the Court will be required to interpret the Plan documents in light of the applicable law. (Docket Entry No. 44 at ¶ 10). Indeed, it appears that most of the documents which are central to this case have already been submitted to this Court as exhibits to Defendants' Motion to Dismiss, including the relevant Plan and certain amendments and exhibits thereto. (Docket Entry Nos. 39-1 – 39-6).

The residences of the parties would appear to be a wash because American Airlines is located in Dallas-Fort Worth, while Plaintiff resides in Nashville. However, a Plaintiff's choice of forum

4

is entitled to some deference, Lewis ACB Business Servs., Inc. 135 F.3d 389, 413 (6th Cir. 1998), and even "greater deference" where as here, Plaintiff's choice of forum complies with ERISA's venue requirements. Shanechian v. Macy's, Inc., 251 F.R.D. 287, 290 (S.D. Ohio 2008)(collecting cases).

Defendants assert that the events at issue took place in Fort Worth because that is where the Plan was drafted and the Plan is administered. While some cases have indicated that the breach of an ERISA plan can occur where the plan is administered, the weight of the cases hold that where, as here, a claim is a refusal to pay benefits under the terms of an ERISA plan, the breach occurs in the place where the plaintiff is to receive his or her benefits. Coulter v. Office and Professional Employees Int'l Union, 2003 WL 21938910 at *3 (E.D. Tenn. 2003)(collecting numerous cases). Such rulings are in keeping with the notion that ERISA provides expanded venue choices, it being "the intent of Congress to give plaintiffs in ERISA actions 'ready access to the Federal court.'" Barnum v. Mosca, 2009 WL 982579 at *3 (N.D.N.Y. 2009) (citation omitted); see, Tritt v. Automatic Data Processing, Inc., 2006 WL 2475248 at *3 (D. Conn. 2006)("Effectuating [Congresses'] policy goals requires giving substantial weight to an ERISA plaintiff's choice of forum").

Having considered the interests of the parties and public-interest concerns, the Court exercises its discretion by retaining jurisdiction over this case. As such, the Motion to Transfer will be denied.

## II. MOTION TO DISMISS

### A. STANDARD OF REVIEW

In considering a Motion to Dismiss, the Court is to construe the Complaint in the light most favorable to the Plaintiff, accept the Complaint's allegations as true, and draw all reasonable

5

inferences in favor of the Plaintiff. DirecTv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). Nevertheless, in order to survive a Motion to Dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the Complaint must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). That is, the Amended Complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Id. at 1974. In making the evaluation, the Court looks to the Complaint, the exhibits attached thereto, and "documents not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims." Nixon v. Wilmington Trust Co., 543 F.3d 354, 357 n.2 (6th Cir. 2008).

**B. RELEVANT FACTS**

Plaintiff has been employed as a commercial pilot by American Airlines since February 14, 1989 and has been a participant in the Plan since his probationary period as a pilot ended. The Plan provides defined retirement benefits to pilots based on the pilot's age, his or her years of service as a pilot, his or her average yearly compensation toward the end of pilot employment, and the application of certain benefit formulas. Only pilots for American Airlines can participate in the Plan and only service as a pilot for American Airlines counts towards the accrual of benefits.

The Plan is entirely funded by American Airlines. American Airlines is identified as the Plan administrator and its Board of Directors is empowered to appoint the PBAC "to exercise the responsibilities of the Administrator."

Plaintiff alleges that, as originally drafted, the Plan contained no suspension of benefits provisions. However, on December 19, 1994, the Plan was amended to include Section 6.10 which, in relevant part, provides as follows:

6

Suspension of Benefits Upon Re-Employment of Retired Members:

> If a retired Member returns to the Service of an Employer subsequent to the time that payment of his Retirement Benefit commences or would have commenced if the Member had not returned to Service, and following such return to Service the Member completes forty (40) or more Hours of Service for an Employer during a calendar month, the Member's benefits shall be permanently suspended for each such month . . . .

(Complaint ¶ 18).

From 1959 until December 2007, federal law prohibited commercial airline pilots from working as such after the age of 60. However, effective December 2007, that age was raised to 65. Presumably because of the governing federal law at the time the Plan was implemented and thereafter amended, the Plan defines the "Normal Retirement Age" for pilots to be 60. The Plan also allows for the late retirement of pilots who work for American Airlines past 60 in a non-pilot job.

After the maximum age for piloting commercial aircraft was increased, questions arose as to how the Plan intended to treat pilots who could now continue to serve as pilots until the age of 65. In a letter dated January 18, 2008 to American Airlines Vice President of Employee Relations Mark L. Burdette ("Mr. Burdette"), Captain Lloyd D. Hill ("Capt. Hill"), President of the Allied Pilots Association ("APA"), the certified collective bargaining representative of American Airlines' pilots, asserted that, under federal law and pursuant to the collective bargaining agreement, the Plan could not suspend benefits of a pilot flying after age 60 without compensating the pilot for the delay by way of an actuarial adjustment to the benefits the pilot would receive upon actual retirement. In response, Mr. Burdette (who is also a member of the PBAC) asserted that American Airlines intended to permit the accrual of credited service by pilots who worked beyond the Plans' normal retirement age of 60, but that neither the law nor the collective bargaining agreement required American Airlines to provide for an actuarial adjustment for pilots who worked beyond the normal

7

retirement age of 60. In support of that position, Mr. Burdette indicated that Section 6.10 relating to the suspension of benefits for re-employed retired members permitted the Plan to suspend retirement benefits without any actuarial adjustment. Mr. Burdette informed Capt. Hill that American Airlines intended to send to every pilot who worked past 60 a "Notice to Employees Who Continue to Work Past Normal Retirement Date: Suspension of Benefits – Department of Labor Regulations" ("Notice") and attached a copy of the Notice to the letter. The notice, which is on American Airlines stationary, states in relevant part as follows:

> If you elect to continue working past your Normal Retirement Date, you cannot commence your benefit under the Plan. You will continue to receive Credited Service under the terms of the Plan and Compensation earned after your Normal Retirement Date will be included, as applicable, in the determination of your benefit. You may not begin receiving your benefit until you leave active employment with American Airlines or any other AMR subsidiary and elect to retire.

(Docket Entry No. 49-3).

On February 14, 2008, Plaintiff turned 60 and continued to work as a pilot for American Airlines. On March 11, 2008, Diane M. Johnson ("Ms. Johnson"), Manager, Pension Plan Administration, sent a letter to Plaintiff which, apart from indicating that it was directed specifically to him, was virtually identical to the Notice Mr. Burdette had previously supplied to Capt. Hill. Attached to Ms. Johnson's letter was a copy of Section 6.10 of the restated Plan.

Since he turned 60, Plaintiff has continued to work as a pilot for American Airlines and, since that time, the Plan has suspended his retirement benefits pursuant to Section 6.10. According to Plaintiff, American Airlines has not indicated that it has any plans to change its position that pilots who fly beyond age 60 will not receive an actuarial adjustment to their retirement benefits upon actual retirement.

8

On February 20, 2008, American Airlines reported to the Securities and Exchange Commission that its liabilities to the Plan had decreased in the amount of $540 million. This decrease was due to the expected longer working lives and shorter retirement periods of pilots flying past age 60.

Based on these events, Plaintiff filed a three-count Complaint in this Court under ERISA. In Count One, Plaintiff alleges that the suspension of the retirement benefits he had accrued prior to the 1994 amendment which added Section 6.10, without any actuarial adjustment upon his retirement, constitutes a violation of ERISA's "anti-cutback" rule, Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In Count Two, Plaintiff alleges that the application of Section 6.10 to any of his benefits constitutes a violation of American Airlines' and the Plan's fiduciary duties under Section 502(a)(2), 29 U.S.C. § 1132(a)(2) because Section 6.10 was never intended to apply to pilots serving as pilots after the normal retirement age of 60. Finally, in Count Three, Plaintiff alleges that American Airlines and the Plan's refusal to provide an actuarial adjustment to his retirement benefits constitutes a violation of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Plaintiff seeks declaratory and injunctive relief, together with costs and attorneys fees.

## C. **APPLICATION OF LAW**

In their respective briefs, the parties spend a great deal of time reviewing ERISA, explaining the terms of the Plan, and arguing about whether the suspension of benefits does or does not violate ERISA or the Plan. However, Defendants do not claim that the entire Complaint must be dismissed on substantive grounds, but instead argue that (1) Plaintiff has failed to exhaust his administrative remedies; (2) Count Two, which alleges a breach of fiduciary duty, should be dismissed because it is nothing more than a disguised claim for individual benefits; (3) Count Three should be dismissed

9

because it, too, is a disguised claim for benefits; and (4) all claims against American Airlines should be dismissed because it is not a fiduciary within the meaning of ERISA.

### 1. Exhaustion of Administrative Remedies

Although not explicitly required by the text of ERISA, courts impose an administrative exhaustion requirement in light of the fact that ERISA and its accompanying regulations contemplate that plans will establish a claims procedure for the processing and assessing of benefit claims. Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 413 (6th Cir. 1998). Although exhaustion of administrative remedies is "a matter of judicial discretion, a court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." Id. at 419. "'The law does not require parties to engage in meaningless acts or to needlessly squander resources as a pre-requisite to commencing litigation.'" Fallick, 162 F.3d at 420.

The Sixth Circuit "routinely enforce[s] the exhaustion requirement when an ERISA plaintiff contends that his benefits were improperly calculated under the terms of the plan," but not where the attack is on the legality of the plan. Durand v. Hanover Ins. Group, Inc., 560 F.3d 436, 439 (6th Cir. 2009). As that court recently explained:

> . . . ERISA plans are often complicated things, and the question whether a plan's methodology was properly applied in a particular case is usually one best left to the plan administrator in the first instance. Administrators, not courts, are the experts in plan administration.
> But the same is not true of an across-the-board challenge to the legality of a plan's methodology. In those cases, the claimant typically concedes that her benefit was properly calculated under the terms of the plan as written, but argues that the plan itself is illegal in some respect . . . . And that question-legality-is one within the expertise of the courts. Sending such a claimant back to the administrative process, to recalculate a benefit she concedes was already properly calculated under the terms of the plan as written, misses the point of the dispute. In that situation, exhaustion wastes resources rather than conserves them. Consequently, we have held that, in an ERISA case, when the plaintiff's "suit [i]s directed to the legality of [a plan], not

10

>   to a mere interpretation of it[,]" exhaustion of the plan's administrative remedies
>   would be futile. . . .

Id. at 439-440 (citations omitted). Moreover, exhaustion of administrative remedies may be excused where the record is well-developed and it is unlikely the plan administrator "will change its position through a 'correction of error' or different 'interpretation of the plan given its stance in the instant litigation[.]" Costantino v. TRW, Inc., 13 F.3d 969, 975 (6th Cir. 1994).

For several reasons, the Court finds that exhaustion of administrative remedies should not be required in this case. Plaintiff is not challenging a benefit computation or decision peculiar to him, but instead is challenging the application of the Plan's suspension of benefits provision in Section 6.10. His challenge is not based upon features of that provision related solely to him, but rather has broader implication to commercial airline pilots who, by law, are now allowed to continue flying past age 60 and continue to do so for American Airlines.

Further, it seems clear that American Airlines has made a firm decision which it has no intention of changing as evidenced by (1) the Notice sent to all pilots when they reach age 60; (2) the letter and attachments from Mr. Burdette to Capt. Hill; (3) the letter and attachment from Ms. Johnson to Plaintiff, (4) the continued suspension of Plaintiff's benefits after he reached age 60, and (5) as further confirmed by the arguments made by Defendants in this case.

Additionally, in making their general arguments regarding ERISA and the Plan, Defendants have submitted documents which they claim are dispositive of Plaintiff's claims. This suggests that administrative proceedings are not necessary to develop the record so as to allow the Court to make an informed decision. See, Costantino, 13 F.3d at 975.

In reaching the conclusion that it would be futile for Plaintiff to exhaust his administrative remedies, the Court has thoroughly considered the arguments raised by the Defendants, and in

11

particular the argument forcefully advanced in the Reply Memorandum that what Plaintiff is really complaining about how the Plan is being interpreted and not that the decision relating to accrual of benefits is illegal or unconstitutional. However, this Court finds Defendants' argument unconvincing because Plaintiff is, among other things, challenging the legality of the decision not to make actuarial adjustments for pilots who fly past the age of 60 as a violation of ERISA's anti-cutback provision. This is potentially a class-wide challenge. Traylor v. Avnet, Inc., 2009 WL 383594 at *5 (D. Ariz. 2009)(collecting cases)("Generally, an anti-cutback claim seeks to enforce specific statutory requirements under ERISA and thus does not require exhaustion.").

### 2. **Breach of Fiduciary Duty Claim**

Defendants seek dismissal of the breach of fiduciary duty claim brought under Section 502(a)(2) because it "is nothing more than his former claim for benefits repackaged" and "because he does not seek relief on behalf of the Plan." (Docket Entry No. 51 at 9).

It is true that a plan participant may not "simply characterize a denial of benefits as a breach of fiduciary duty." Wilkins v. Baptist Healthcare Sys. Inc., 150 F.3d 609, 616 (6th Cir. 1998). However, plan participants who bring individual benefit claims may also bring breach of fiduciary duty claims where they seek plan-wide injunctive relief, not individual benefit payments. Hill v. Blue Cross and Blue Shield of Mich., 409 F.3d 710, 718 (6th Cir. 2005). Moreover, an individual participant in a plan has standing to seek recovery for losses to the pension plan (as opposed to individual losses) in the form of a breach of fiduciary claim. Tullis v. UMB Bank N.A., 515 F.3d 673, 679 (6th Cir. 2008).

In this case, Plaintiff, who is a participant or beneficiary of the Plan, claims that Defendants have willfully misapplied Section 6.10 of the Plan to pilots who fly over age 60 when the Section was intended only to apply to pilots who continue to work in a capacity other than as a pilot. He

12

alleges that as a direct result of this misapplication, American Airlines has claimed to the Securities and Exchange Commission that its funding obligation to the Plan has been reduced in the amount of $540 million, with the plain implication being that the Plan's right to call upon American Airlines for funding has been reduced by that amount. He seeks declaratory and injunctive relief for which the Plan, and not he, would be the direct beneficiary. As such he has stated a viable claim for breach of fiduciary duty.

### 3. Section 502(a)(3) Claim

Section 502(a)(3) allows a plan participant or beneficiary to bring an action to "recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(3). This is a "catch-all remedial section," Varity Corp. v. Howe, 516 U.S. 489, 515 (1996), which the Sixth Circuit previously read as being barred when a plaintiff also brings a claim for denial of benefits under Section 502(a)(1)(B). Gore v. El Paso Energy Corp., 477 F.3d 833, 839 (6th Cir. 2007). However, as explained in Gore, "this misunderstanding was dispelled" in Hill, *supra*, which "clarified that under some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(b) [Section 502(a)(1)(b) and § 1132(a)(3) [Section 502(a)(3)]." Gore, 477 F.3d at 839. Nevertheless, as made clear by the Supreme Court in Varity Corp., Section 502(a)(3) authorizes only "appropriate" equitable relief, and, thus, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Vanity Corp., 516 U.S. at 515.

In this case, Plaintiff fails to explain adequately how his claim for equitable relief under Section 502(a)(3) is not duplicative of his claim under Section 502(a)(1)(B). In Count One which alleges a violation of Section 502(a)(1)(B), as well as in Count Three which alleges a violation of

13

Section 502(a)(1)(B), Plaintiff asserts that his benefits were wrongly suspended and as such he was wrongfully deprived of retirement benefits to which he is entitled. He seeks declaratory and injunctive relief for both purported violations which would effectively require Defendants to pay him the accrued benefits to which he claims he is entitled. While Plaintiff claims in his Response Brief that Count Three is different from Count One because it seeks Plan-wide relief for all similarly situated pilots, Count Three does not read that way. To the contrary Count Three closely parallels Count One and specifically alleges <u>he</u> (not others) has continued to work as a pilot past the age of 60, the Plan does not contain a valid suspension-of-benefits provision applicable to <u>him</u>, the Plan and American Airlines have made clear to <u>him</u> that no actuarial adjustment will be made for the delay in <u>his</u> retirement past the normal retirement age, and that as a result <u>he</u> has been deprived and will continue to be deprived of retirement benefits to which <u>he</u> is legally entitled. (Complaint ¶¶ 47-50). There are no class-wide allegations in Count Three and therefore any declaration of entitlement to an accrual of benefits will inure to Plaintiff just like in Count One. Given the way the Complaint is drafted, the Court is constrained to hold that Count Three does not set forth a claim for relief which is different than Count One and, as such, Count Three will be dismissed without prejudice.

**4. American Airlines and Fiduciary Duty**

In moving to dismiss all claims against American Airlines, Defendants argue that breach of fiduciary duty claims can only be brought against fiduciaries and that ERISA defines "fiduciary" under Section 1002(21)(A) as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

14

29 U.S.C. § 1002(21)(A). Based upon that provision, Defendants assert that Plaintiff's claims against American Airlines should be dismissed because he cannot show that American Airlines was a fiduciary with respect to any act about which he complains. Defendants go on to note that an employer may wear "two hats," one as an employer and the other as a fiduciary and "the threshold question is not whether the actions of some person employed to provide services under the plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000).

However, Section 1002(21)(A) is not dispositive of the fiduciary issue because that statutory provision is a reference to "de facto fiduciaries," not "named fiduciaries." Section 1102(a) provides that every plan "shall provide for one or more named fiduciaries who jointly and severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Section 1102(a)(2) provides that "the term 'named fiduciary' means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary.

"Assessing whether a person is a named fiduciary under the terms of a plan is, of course, a straightforward inquiry." In re Luna, 406 F.3d 1192, 1202 (10th Cir. 2005). "Once deemed a fiduciary, either by express designation in the plan documents or the assumption of fiduciary obligations (the functional or de facto method), the fiduciary becomes subject to ERISA's statutory duties." Id. at 1211; see, Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006)("for purposes of ERISA, a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets"); Kerstein v. Past-O-Matic Valves, Inc., 2008 WL 2942135

15

at *7 (D.N.J. 2008)("ERISA clearly mandates that an individual is a fiduciary if they [sic] are a named fiduciary or trustee of the plan or . . . fall under the definition of 29 U.S.C. § 1002(21)(a)"); Pension Stock Ownership Plan v. Patterson, 547 F.Supp.2d 1230, 1239 (N.D. Ala. 2008)("The simplest means of determining whether [defendant] functioned as a fiduciary under ERISA is to look to the [plan] itself and who it named as fiduciaries"); In re Marsh ERISA Litig., 2006 WL 3706169 at *4 (S.D.N.Y. 2006)("ERISA expressly contemplates two methods of pleading a party's fiduciary status: (1) by identifying that party as a named fiduciary, who is explicitly designated as a fiduciary in plan documents; and (2) by identifying that party as a de facto fiduciary, who has or performs discretionary fiduciary responsibility with respect to a plan").

In this case, the Plan indicates "[t]he Company [American Airlines] shall be Administrator of the Plan" and that for purposes of ERISA "the Company shall be the 'named fiduciary of the Plan." The Plan, in turn provides that "the Administrator shall possess authority to control and manage the operation and administration of the Plan[.]" (Docket Entry No. 49-1 at 1).

Further, while Defendants assert in a conclusory fashion that American Airlines was not acting in a fiduciary capacity with respect to the issue involved in this lawsuit, the Court cannot ignore the allegations in the Complaint and the inference to be drawn therefrom. Specifically, the Complaint alleges that Mr. Burdette, while speaking either as American Airlines' Vice President of Employee Relations or as a member of PBAC, interpreted the Plan's suspension of benefits provision as precluding an actuarial adjustment to the retirement benefits of pilots who continued to fly after age 60 and American Airlines reported to the SEC that its liability was decreased by $540 million based upon the change in flying rules. Given such allegations, Plaintiff may be able to establish that American Airlines did in fact breach a fiduciary duty by dictating the manner in which the suspension of benefits provision would be interpreted for its own financial benefit.

16

## III. CONCLUSION

On the basis of the foregoing, "Defendants' Motion to Transfer Venue" (Docket Entry No. 35) will be denied. "Defendants' Motion to Dismiss Plaintiff's Original Complaint" (Docket Entry No. 38) will be denied except with respect to Count Three of the Complaint and that Count will be dismissed without prejudice.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE